MARK MATALAVAGE, an Infant, by MARY A. PASKEY, His Natural Mother and Guardian and Administratrix of the Goods, Chattels and Credits of WILLIAM J. MATALAVAGE, Deceased, Appellant-Respondent, v ROBERT SADLER, Doing Business as MAYBROOK INN, Respondent, and JOHN MARSHALL et al., Respondents-Appellants.

Second Department, October 6, 1980

**APPEARANCES OF COUNSEL**

*Albert J. Emanuelli* for appellant-respondent.

*Finkelstein, Mauriello, Kaplan & Levine, P. C. (Howard Karger* and *Sheila Callahan* of counsel), for respondents-appellants.

## OPINION OF THE COURT

TITONE, J.

The issue is whether the infant child of an intoxicated person who is killed by reason of his intoxication, may institute a cause of action under section 11-101 of the General Obligations Law.

I. FACTS

Mary Ann Paskey commenced the present action as "natural mother and Guardian" of Mark Matalavage, and "Guardian and Administratrix of the Goods, Chattels and Credits" of the decedent (Mark Matalavage's father), against Robert Sadler, doing business as Maybrook Inn, and John and Clara Marshall. Plaintiff alleged, *inter alia,* that the defendants were responsible to Mark, under section 11-101 of the General Obligations Law (commonly known as the Dram Shop Act or Civil Damages Act), for losses of companionship and comfort and for monetary support. Plaintiff also alleged that Sadler "was an employee, agent, and/or servant of JOHN W. MARSHALL and CLARA MARSHALL, his employer", and that John and Clara Marshall "operate, control and maintain" the Maybrook Inn bar and grill.

The circumstances underlying this action arose as follows: Defendants John and Clara Marshall are the owners of a two-family building in Maybrook, New York, in the first floor and cellar of which is located a bar and grill known as the Maybrook Inn. John Marshall owned and operated the Maybrook Inn pursuant to a certificate of doing business filed with the Orange County Clerk's office on September 21, 1967. Mr. Marshall operated the bar until 1974. From 1967 to 1974 he employed Robert Sadler as a part-time bartender and Maude Gleason as a barmaid. In 1974 Marshall closed the bar and grill. However, he neglected to cancel his certificate of doing business.

In January, 1975 Sadler reopened the bar and grill, using Maybrook Inn as its name. Sadler, in September of 1976, entered into a written lease agreement for the bar and grill with Marshall. Sadler continued as bartender and Maude Gleason remained as barmaid of the inn. Although Sadler

applied for his own liquor license, he failed to file a certificate of doing business as required by section 130 of the General Business Law.

At approximately 10 P.M. on November 12, 1976, William Matalavage entered the Maybrook Inn. During that evening and the early hours of the next morning he consumed a quantity of draft beer served by Sadler. Matalavage left the bar at about 4 A.M. and thereafter entered his automobile. After traveling a short distance he struck a telephone pole and died instantly. Surviving Matalavage were his son Mark, born on Janaury 6, 1962, whom he was apparently supporting, and his divorced wife, Mary Ann Paskey.

After issue was joined in the present action, defendants Marshall made a motion for summary judgment. Special Term (FERRARO, J.) denied this motion, with leave to renew after examinations before trial.

After the examinations, the Marshalls again moved for summary judgment. The court thereupon dismissed the complaint, stating that section 11-101 of the General Obligations Law ,"does not create a right of action in favor of the party whose intoxication has resulted from the illegal sale of liquor and, accordingly, his administrator is also not vested with any such cause of action by EPTL 5-4.1". I disagree with such reasoning and determination.

Special Term misperceived the thrust of plaintiff's complaint. Notwithstanding the partially inaccurate title of the case ("Mary A. Paskey * * * Administratrix of the Goods, Chattels and Credits of William J. Matalavage, Deceased"), for all intents and purposes the action was brought on behalf of the decedent's infant son and not on behalf of the decedent's estate. The issue presented before Special Term, and on appeal, is whether the child of one who is killed due to self-induced intoxication has a cause of action under the Dram Shop Act.

II. STATUTORY HISTORY

The origin of the current Dram Shop Act, embodied in section 11-101 of the General Obligations Law, is found in the excise law of 1857 (L 1857, ch 628), entitled "An Act to Suppress Intemperance and to Regulate the Sale of Intoxicating Liquors". Pursuant to section 28 of the excise law, any person who sold "any strong or spirituous liquors" to any individual to whom that act declared such sale to be unlawful, was held "liable for all damages which may be sustained in

consequence of such sale". Further, the law declared that the offending parties could be sued by any individual sustaining the injuries or by the overseers of the poor for his benefit.

The first actual "Dram Shop Act" was not passed until 1873 (L 1873, ch 646). It was denominated "An Act to Suppress Intemperance, Pauperism and Crime". This act provided that: "Every husband, wife, child, parent, guardian, employer or other person who shall be injured in person, or property, or means of support, by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her name, against any person or persons who shall, by selling or giving away intoxicating liquors, [have] caused the intoxication, in whole or in part, of such person or persons, and any person or persons owning or renting or permitting the occupation of any building or premises, and having knowledge that intoxicating liquors are to be sold therein, shall be liable * * * for all damages sustained and for exemplary damages".

The constitutionality of this act was upheld in 1878 in *Bertholf v O'Reilly* (74 NY 509).

Between 1873 and 1921, the act underwent several minor revisions and modifications (see *Quinlan v Welch,* 141 NY 158 [1894]; *Snyder v Launt,* 1 App Div 142 [1896]; *Westbrook v Miller,* 98 App Div 590 [1904]; see, also, L 1892, ch 401, § 40; L 1892, ch 403, § 2; L 1896, ch 112, § 39; L 1909, ch 39). In 1921 the act was incorporated into section 16 of the Civil Rights Law (L 1921, ch 157). Therein it was stated, in part, that: "Any person who shall be injured in person, property, means of support, or otherwise by any intoxicated person, or by reason of the intoxication of any person, whether resulting in his death or not, shall have a right of action against any person who shall, by unlawful selling to or unlawfully assisting in procuring liquor for such intoxicated person, have caused or contributed to such intoxication; and in any such action such person shall have a right to recover actual and exemplary damages."

Additionally, to determine whether there was an unlawful sale of liquor under the statute, it was held that the statute must be read and considered in conjunction with section 65 of the Alcoholic Beverage Control Law *(Moyer v Lo Jim Cafe,* 19 AD2d 523, affd 14 NY2d 792). Section 65, entitled "Prohibited sales", provides that it is unlawful for any person to sell, deliver or give away any alcoholic beverage to (1) any minor,

actually or apparently under the age of 18 years, (2) any intoxicated person, actually or apparently under the influence of liquor, or (3) any habitual drunkard known to be such to the person authorized to dispense any alcoholic beverage.

Finally, effective September 27, 1964, the provisions of section 16 of the Civil Rights Law were transferred to section 11-101 of the General Obligations Law without any change in language (L 1963, ch 576). The 1963 statute must likewise be read in conjunction with section 65 of the Alcoholic Beverage Control Law *(Manfredonia v American Airlines,* 68 AD2d 131, 135).

III. PURPOSE

The object of the early act was to correct the evils resulting from intemperate indulgence in intoxicating liquors, such as impoverishment of families, injuries to others, and the creation of public burdens (Joyce, Intoxicating Liquors, p 476 [1910]). The Legislature believed that by imposing civil liability upon the seller he would be more careful in his sales and would demonstrate a greater consideration for the purchaser and his dependents. *One major purpose of this type of statute was to protect the wife and children of an intoxicated person when they were deprived of their means of support as a result of his intoxication (id.,* p 476).

Moreover, the Court of Appeals has held that the intent and purpose of the act is to suppress the sale and use of intoxicating liquor and to protect and provide a remedy for dependents and persons injured by the unlawful sale of liquor *(Mead v Stratton,* 87 NY 493). This statute, which is remedial in nature (see *Wilcox v Conti,* 174 Misc 230), thus creates an expansive cause of action completely unknown at common law (see *Volans v Owen,* 74 NY 526; *Mead v Stratton, supra).*

IV. CONCLUSION

In view of the history and purpose of the statute, I believe that the clear intent of the Legislature in enacting the Dram Shop statute was to permit the institution of actions such as the one at bar.

It is well established that this act does not create a cause of action in favor of the individual whose intoxication resulted from the unlawful sale of liquor *(Mitchell v The Shoals, Inc.,* 19 NY2d 338; *Moyer v Lo Jim Cafe, supra; Paul v Hogan,* 56 AD2d 723; *Scatorchia v Caputo,* 263 App Div 304). Hence, no cause of action is transmitted to his estate *(Mitchell v The*

*Shoals, Inc., supra; Scatorchia v Caputo, supra).* However, a review of the complaint involved in the present action reveals that, notwithstanding the inaccurate title, the action was brought by Mary Ann Paskey in the name of the decedent's son, and not as the administratrix of the decedent's estate. Thus, Special Term incorrectly dismissed the plaintiff's cause of action on the ground that it was brought by the administratrix of the intoxicated individual.

With respect to whether a cause of action accrues to the infant child of an intoxicated person under the Dram Shop Act, courts have, in dicta, held in the affirmative (see *Scatorchia v Caputo, supra,* p 305; *Garlinghouse v Nelson,* 72 Misc 2d 432; *Moyer v Lo Jim Cafe, supra).* Moreover, appellate courts in early cases have upheld such right of action under the prior statutes *(Neu v McKechnie,* 95 NY 632; *Hosdale v Marrabell,* 285 App Div 1168).

In view of such judicial precedent, *supra,* and the statutory history of the various Dram Shop Acts enacted in this State over the years, it is clear that, despite the inaccurate title of the within action, the mother of the infant herein was entitled to institute the suit on his behalf under section 11-101 of the General Obligations Law (cf. *Hosdale v Marrabell, supra).*

I also conclude that there are questions of fact, particularly with respect to the relationship between the defendants, which require a full trial. Therefore, the order of Special Term granting summary judgment should be reversed, and defendants' motions for summary judgment denied.

With respect to the denial of the Marshalls' motion to disqualify plaintiff's counsel, I am of the opinion that on the papers presented Special Term properly exercised its discretion in denying the application.

MOLLEN, P. J., HOPKINS and MANGANO, JJ., concur.

Order of the Supreme Court, Westchester County, entered December 27, 1979, reversed, on the law, and defendants' motions for summary judgment denied.

Order of the same court also entered December 27, 1979, affirmed insofar as it denied the motion of defendants Marshall to disqualify plaintiff's counsel.

Plaintiff is awarded one bill of $50 costs and disbursements payable by defendants Marshall.