OPINION OF THE COURT
David O. Boehm, J.
In this motion for dismissal of a third-party complaint we are squarely faced with the question of whether the public policy underlying New York State’s Dram Shop Act (General Obligations Law, § 11-101) permits a defendant charged with liability under that statute to seek indemnity or contribution from a vendee whose negligence may have contributed to the complained of injuries.
Section 11-101 of the General Obligations Law creates, on behalf of persons injured by any intoxicated person, a *822 cause of action against all who “by unlawful selling to or unlawfully assisting in procuring liquor for such intoxicated person, have caused or contributed to such intoxication”. An illegal sale is a sale of alcoholic beverages to a minor, to a habitual drunk or to an “intoxicated person or to any person, actually or apparently, under the influence of liquor” (Alcoholic Beverage Control Law, § 65; Allan v Keystone Nineties, 74 AD2d 992). Liability under this law is not grounded in negligence but, rather, is based upon breach of a statutory duty unknown at common law (Moyer v Lo Jim Cafe, 19 AD2d 523, affd 14 NY2d 792; see, generally, McNally v Addis, 65 Misc 2d 204). In order to .recover under section 11-101 of the General Obligations Law, a plaintiff injured by an intoxicated person need only show that the defendant’s illegal furnishing of liquor to that person contributed to his intoxication (3 NY Jur 2d, Alcoholic Beverages, p 469).
In the present action the defendants are alleged to have contributed to the intoxication of one Donald A. Rowe who, because of such intoxication, caused an automobile accident that resulted in the death of three sisters and the infliction of serious injuries upon another. The defendants have, in turn, interposed a third-party claim against Rowe “for the amount of any recovery obtained against them.” Third-party defendant, Rowe, now moves for dismissal of the claim against him on the ground that neither common-law indemnity nor contribution under CPLR article 14 ought to be available to violators of New York’s Dram Shop Act. Rowe contends that to permit either claim against him would defeat the public policy underlying section 11-101 of the General Obligations Law by effectively permitting one who unlawfully sells alcohol to escape a liability which is intended to be essentially penal.
The question of whether the defendants may assert a claim of indemnity need not detain us long for it is settled that they may not. In the absence of an express contract the right of indemnity arises where one party is compelled by a judgment to respond in damages for the wrongful act of another. In such a case the person who has been required to answer for another’s tort may seek recovery *823 against that party by whose act or neglect the injury was produced. The purpose of the rule is to prevent unjust enrichment of a wrongdoer at the expense of one who has been held only vicariously liable for the farmer’s negligence by shifting the whole economic burden from the vicarious tort-feasor to the one actively culpable in causing the loss (Green Bus Lines v Consolidated Mut. Ins. Co., 74 AD2d 136; 2A Weinstein-Korn-Miller, NY Civ Prac, par 1401.09). Even so, a right of indemnification will not lie against every active wrongdoer who caused the original plaintiff harm, but only against that party whose culpable acts have been imputed to the vicarious defendant (Starch v Moritsky, 24 AD2d 1027).
The sale of intoxicating liquor to an intoxicated person is active wrongdoing, separate from but on an equal footing with the acts of the inebriate which resulted in injury (King v Ees-Tee Rest., 36 AD2d 680; Kinney v 1809 Forest Ave., 7 Misc 2d 1). Because of this a Dram Shop Act violator is foreclosed from seeking indemnification from his vendee. Nor is this rule any different for one who has been vicariously cast in liability for a Dram Shop Act violation, and while a tavern owner may be entitled to indemnification from his errant servant, neither he nor his employee may seek indemnification from a vendee whose actions have caused them to be answerable for a third party’s injuries (King v Ees-Tee Rest., supra).
To be distinguished from indemnity, however, is the doctrine of equitable contribution which was introduced to this State in 1972 by the Court of Appeals in Dole v Dow Chem. Co. (30 NY2d 143) and which is now codified in CPLR article 14.
This right of contribution is much broader than that afforded by common-law indemnity, requiring only that the party seeking contribution and the party from whom contribution is sought be liable, in whole or in part, for the same injury (Nassau Roofing & Sheet Metal Co. v Celotex Corp., 74 AD2d 679). It is sufficient if each party’s breach of its respective duty was in part responsible for the harm suffered and so even the perpetrator of an intentional tort may invoke CPLR 1401 to require contribution from one who by mere negligence contributed to an injury *824 (Taft v Shaffer Trucking, 52 AD2d 255, opp dsmd 42 NY2d 974).
Nevertheless, it was recognized by the Judicial Conference, at whose behest CPLR article 14 was enacted, that under certain circumstances the availability of a right to contribution might frustrate the legislative intent behind statutes imposing strict or absolute liability for disfavored conduct. The 1974 Judicial Conference Report stated:
“When liability to the injured person is predicated upon the violation of a statute, difficult questions concerning the appropriateness of applying the proposed Article arise when the violation of the statute gives rise to strict or absolute liability and does not merely constitute negligence per se. See Van Gassbeck v. Webatuck Cent. School, 21 N. Y. 2d 239, 244 (1967) (explanation of difference between the two doctrines).
“It seems clear that in those strict or absolute liability cases in which every person subject to a claim for contribution has violated the statute, the proposed Article should apply, for its application will foster the goal of loss distribution among wrongdoers without interfering with any legislative policy of deterrence which might have been a motivating factor in the passage of the act. See, e.g., Rubel v. Stackrow, 72 Misc. 2d 734, (Sup. Ct., Albany Co. 1973) (Dole applicable where all wrongdoers violated Dram Shop Act.)
“However, where only one of the wrongdoers is charged with violating a statute imposing absolute liability, and such wrongdoer attempts to assert a claim for contribution against one who is liable only for common law negligence, resolution of the issue is more difficult. It is suggested that courts should apply this Article in such cases unless it is clear that the legislative policy which led to the passage of the statuté would be frustrated by the granting of contribution in favor of the person who violated the statute. See Wood v. City of New York, 39 App. Div. 2d 534, (1st Dept. 1972) (mem.) (Dram Shop Act violator may assert Dole claim against intoxicated person).”
(Twentieth Ann Report of NY, Judicial Conference, 1975 pp 215-216; see, also, Siegel, Practice Commentaries, *825 McKinney’s Cons Laws of NY, Book 7B, CPLR, C3019, p 298.)
The third-party defendant in this action now urges that the legislative policy which led to the passage of section 11-101 of the General Obligations Law and its predecessors will be frustrated if those who sell intoxicants illegally are permitted to seek contribution from the persons to whom they unlawfully sold the liquor. The only New York appellate court to consider the precise question of the availability of contribution to a Dram Shop Act defendant concluded that such a right was available (Wood v City of New York, 39 AD2d 534, supra). It appears from a review of that decision and the briefs submitted in the appeal, however, that the public policy argument now advanced was not raised or considered by that court. Nevertheless, other New York courts have considered the argument in one context or another and, while third-party defendant Rowe’s position is not without support, my reading of the case law leads me to conclude that the Dram Shop Act defendants in this case may maintain claims for contribution against Rowe.
In Rubel v Stackrow (72 Misc 2d 734, supra), a post-Dole case, the court held that one Dram Shop Act defendant could seek equitable contribution from another defendant under the act. While the decision in that case appeared to rely heavily on Wood v City of New York (supra) it also addressed the argument that to grant a right of apportionment to a Dram Shop Act defendant would contravene the legislative intent behind section 11-101 of the General Obligations Law. As to this, the court wrote (p 735-736): “Nor would the apportionment of damages recovered by a successful plaintiff interfere with the rule of strict liability imposed by the statute *** While the fact that an intoxicated person has purchased intoxicating beverages from other establishments does not absolve the vendor from full liability if violation of the statute has been proved *** it is now settled that the injured party is entitled to only one recovery for all his actual injuries”.
Rowe contends that even assuming Rubel to be correctly decided (and he suggests that it was not), a rule *826 that would permit codispensers of alcohol to share the burden of a civil fine should not be extended to require a nonoffender of the statute, such as the purchaser, to contribute to the payment of that fine. This argument requires a determination of whether the liability imposed by section 11-101 of the General Obligations Law is, as Rowe insists, purely in the nature of a penalty imposed upon those who sell alcohol in contravention of the statute.
Section 11-101 of the General Obligations Law and its identical predecessor, former section 16 of the Civil Rights Law, provided for the recovery of both compensatory and exemplary damages in the event of injury resulting in part from an unlawful sale of alcohol. Although the statutes creating this remedy have been alternately characterized as “penal” and “remedial” by various New York courts (compare Play ford v Perich, 2 Misc 2d 170, with Wilcox v Conti, 174 Misc 230), it is generally acknowledged that they were enacted for the dual purposes of suppressing the sale and use of intoxicating liquor, and of protecting and providing a remedy for dependents and persons injured by the unlawful sale of liquor (Matalavage v Sadler, 77 AD2d 39; Mead v Stratton, 87 NY 493).
As noted, the right to seek contribution from tort-feasors did not appear in its current form in New York until 1972. Nevertheless, the argument that a Dram Shop Act defendant should not be permitted to diminish his liability by apportioning damages with his vendee was considered, albeit in a slightly different context, at least 16 years earlier in Playford v Perich (2 Misc 2d 170, supra). In that case the Appellate Term refused to permit a Dram Shop Act defendant to plead, as a setoff to any ultimate liability, settlement payments that had been made to the plaintiffs by an insurer of the motor vehicle in which plaintiffs’ decedents had met their death. The decision rested upon a finding that the liability created by section 16 of the Civil Rights Law was intended to be penal. “It is in the nature of a civil fine, the amount of which is to be determined by a jury, and the proceeds of which are to go to a private individual or individuals, and not into the public treasury” (supra, at p 172). Having made this find *827 ing, the court concluded that (p 173) “there can be no diminution of the penalty in the way of damages fixed thereby, by applying in reduction or mitigation thereof, an amount of money fortuitously recovered in an action for wrongful death, either by way of settlement or a verdict therein.”
More recently, however, in the case of Mitchell v The Shoals, Inc. (48 Misc 2d 381, affd 26 AD2d 78, affd 19 NY2d 338) the strict holding of Play ford v Perich (supra) was rejected, and the Dram Shop Act defendant was permitted to reduce a portion of the judgment against him by the amount of a settlement previously obtained by the plaintiff from the intoxicated tort-feasor’s insurer. While the Mitchell court agreed that the intent of the Dram Shop Act (then Civil Rights Law, § 16) was to discourage the unlawful sale of alcoholic beverages, it went on to observe (48 Misc 2d 381, 382, supra): “Clearly, insofar as the exemplary damages awarded are concerned, there should be no diminution, for the penal effect of the statute would be substantially vitiated thereby. However, insofar as actual damages are concerned and in accord with the general practice against allowing double recoveries for one injury, it is the opinion of this court that actual damages should be reduced by the amount of the prior settlement. The provision in the statute for the award of two types of damages in suits based thereon indicates that the penal aspect was considered apart from that provision which allowed the award for actual loss.”
Neither the decision of the Appellate Division nor that of the Court of Appeals, both of which affirmed the judgment of the court below, addressed the set-off issue. Nevertheless, the Supreme Court’s reasoning in Mitchell has since received the imprimatur of the Second Department (see Crumpton v Rojon Rest., 34 AD2d 994).
More recently, in Kelly v Diesel Constr. Div. of Carl A. Morse, Inc. (35 NY2d 1) the Court of Appeals was asked to deny the right of equitable contribution to a general contractor which had violated sections 240 and 241 of the Labor Law imposing upon landowners and contractors a nondelegable liability for failure to provide a safe workplace on construction sites. Although the Court of Appeals *828 held that denying indemnification in such cases (p 5) “accorded with legislative purpose not merely to create a fund for the injured workman’s recovery, but to prevent accidents”, it refused to so limit the right to contribution (p 4) “in light of the universality of insurance and current doctrine favoring apportionment of damages among joint tort-feasors.” In those situations where one’s liability is predicated upon a Dram Shop Act violation these considerations are equally compelling.
While the Dram Shop laws of this State may have been motivated in part by a desire to curb intemperance, one of their primary goals was to assure that persons injured in person or support by the intemperance of others would have an available avenue of recovery for their injuries (Bertholf v O’Reilly, 74 NY 509; Matalavage v Sadler, 77 AD2d 39, supra; note Liability Under the New York Dram Shop Act, 8 Syr L Rev 252; cf. Osborn v Borchetta, 20 Conn S 163 [New York Civil Rights Law, § 16 not penal in the usual sense]). In those cases in which punishment may be appropriate, the Legislature has provided that such punishment may be meted out by the imposition of exemplary damages. Significantly, it has been held that punitive damages are not appropriate in every instance of a Dram Shop Act violation (Reid v Terwilliger, 116 NY 530). Indeed, since it is not clear that willfulness is a necessary predicate to Dram Shop Act liability (see, e.g., Harris v Hurlburt, 83 Misc 2d 626), it seems incongruous to automatically deny contribution to all such defendants, particularly in light of the fact that such a right lies even in favor of an intentional tort-feasor (Taft v Shaffer Trucking, 52 AD2d 255, supra).
The sister State cases cited by the third-party defendant do not require an alteration of this view, nor is the reasoning of those cases inconsistent with this court’s resolution of the question.
The Illinois case of Wessel v Carmi Elks Home (54 Ill 2d 127, 133) holds simply that “those who may incur liability under [the Illinois Dram Shop law] may not seek indemnity from one who, being in an intoxicated condition, committed a tortious act which gives rise to the dramshop action” (emphasis added). I concur, but the Wessel court *829 did not discuss the question of whether the principles of contribution should apply. Apparently Illinois law did not apportion liability when Wessel was decided (see supra, pp 128-129).
Nor is a different determination required by the reasoning in the Michigan case of Putney v Gibson (94 Mich App 466). That case did, in fact, refuse to permit a Dram Shop Act defendant to set off against his liability a settlement paid to the plaintiff by the intoxicated defendant who had caused his injuries, but the result in that case appears to have been compelled by the general Michigan rule that contribution is available only among joint tort-feasors and that “[a]n active wrongdoer and persons liable by reason of statutory enactment are not joint tort-feasors even though there is a single indivisible injury.” (Virgilio v Hartfield, 4 Mich App 582, 585). It seems that Michigan’s courts have long been guided by the view that since purely statutory liabilities are generally in derogation of the common law they are to be construed strictly so as not to extend the liability so created to anyone other than the violator of the statute (Geib v Slater, 320 Mich 316).
As already discussed, New York’s rule of contribution is far broader than that in Michigan and the right of contribution is not, in this State, limited only to co-tortfeasors. All that is required by CPLR 1401 is that there be “two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death”.
In view of this State’s strong policy favoring the apportionment of compensatory damages in accordance with relative culpability, the third-party defendant’s motion to dismiss the cross claim is denied.