ILDE A. SOTO, Individually and as Administratrix of the Estate of NELSON RIVERA, et al., Appellants, v ELISIO MONTANEZ et al., Respondents.

Fourth Department, December 26, 1991

---

### APPEARANCES OF COUNSEL

*Charles L. Davis* for appellants.

*Bouvier, O'Connor (Chris Trapp* of counsel), for Mary J. Casey and another, respondents.

*Hodgson, Russ, Andrews, Woods & Goodyear (R. William Larson* of counsel), for Greyhound Food Management, Inc., respondent.

### OPINION OF THE COURT

BALIO, J.

New York's Dram Shop Act (General Obligations Law § 11-101 [1]) provides that "[a]ny person who shall be injured in person, property, means of support, or otherwise by any intoxicated person, or by reason of the intoxication of any person * * * shall have a right of action" for a violation of the statute. On this appeal we are called upon to decide, apparently as an issue of first impression in this State, whether a former wife who is not receiving maintenance pursuant to a divorce decree and an unmarried woman, both of whom allege that they received voluntary contributions of support, are persons "injured in * * * means of support" within the meaning of the Dram Shop Act. We conclude that they are.

I

Nelson Rivera and Angel Echevarria died from injuries suffered when they were struck by a car. It is alleged that, prior to the accident, an establishment owned and operated by defendant Greyhound Food Management served alcoholic beverages to the operator of that car in violation of the Dram Shop Act (General Obligations Law § 11-101).

At the time of the accident, Nelson Rivera was living with plaintiff Ilde Soto and their children. Although he and Soto had been divorced three years prior to the accident, they continued to live together. The divorce decree did not direct

Rivera to pay spousal maintenance, but Soto maintains that she regularly received $740 per month from Rivera for the support of the household and that she was dependent upon Rivera for her support. At the time of his untimely death, Angel Echevarria lived with plaintiff Mildred Colon and their children. Although unmarried, the couple had lived together since 1983 and, according to Colon, Echevarria regularly gave her nearly the full amount of his unemployment checks to support the household. She likewise asserts that she was dependent upon Echevarria for support.

■ Each plaintiff, in her individual capacity and as the administratrix of the estate of her deceased companion, commenced an action against Greyhound and the operator and owner of the car. Plaintiffs now appeal from an order* granting defendants' motions for partial summary judgment dismissing the wrongful death and Dram Shop causes of action asserted by each plaintiff in her individual capacity. In granting defendants' motions, Supreme Court found that plaintiffs' status as live-in girlfriends provided no legal basis for their claims and that the claims were too remote and speculative. Plaintiffs have raised no issue in their brief or on oral argument regarding dismissal of the wrongful death portion of their causes of action and we deem that issue to have been abandoned and waived (see, Velte v Jainew Enters., 122 AD2d 544).

## II

Plaintiffs' principal contention is that a person may be injured in her "means of support" even though no legal duty of support was owed to her, and thus, that Supreme Court erred in concluding that their status as an unmarried "wife" was not a legal basis for their action.

■ It is settled law in New York that a person may maintain a Dram Shop action for injury to their "means of support" irrespective of whether the plaintiff has a legal right

---

■* Greyhound contends that appeal from an order entered several months after entry of a judgment is improper and that plaintiffs should have appealed from a judgment entered after a trial of the causes of action asserted by plaintiffs in their representative capacity. We disagree. Although an appeal from a judgment brings up for review any nonfinal order, the subject order dismissing plaintiffs' individual causes of action was a final order that was not subsumed in the judgment (see, Crystal v Manes, 130 AD2d 979; see also, Siegel, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5501:3, 1991 Pocket Part, at 2-3).

to support from the deceased or injured person. New York's first actual Dram Shop Act, known as the Civil Damage Act (L 1873, ch 646, § 1; hereafter the 1873 Act), authorized "[e]very husband, wife, child, parent, guardian, employer or other person" to sue for injury to their means of support. At the outset, therefore, the Legislature enabled parents to sue for a loss of their "means of support" irrespective of whether they had a legal right to support from the deceased or injured person *(see, De Puy v Cook,* 90 Hun 43; *Stevens v Cheney,* 36 Hun 1). In 1921, the Dram Shop Act was reenacted as section 16 of the Civil Rights Law (L 1921, ch 157), and the listing of specific classes of persons was eliminated in favor of the more general term, "[a]ny person". Since 1921, New York courts have consistently recognized the right of a parent to sue for a loss of support irrespective of the absence of a legal duty *(see, e.g., Raynor v C.G.C. Grocery Corp.,* 159 AD2d 463; *Delamater v Kimmerle,* 104 AD2d 242, 244; *McNally v Addis,* 65 Misc 2d 204; *see also,* Comment, *Intoxication—Liability and Recovery: A Practical Look at New York's Dram Shop Act,* 39 Alb L Rev 15, 22 [1974]). Clearly, the Legislature did not intend to restrict a support claim under the Dram Shop Act to those persons who were owed a legal duty of support.

Courts in other States having statutory language identical to New York's 1873 Act or to the current "[a]ny person" language in General Obligations Law § 11-101 (1) have held that proof of a legal duty to support is not required. Thus, a sister *(see, Nagle v Keller,* 237 Ill 431, 86 NE 694; *United States Fid. & Guar. Co. v State ex rel. Ballard,* 46 Ind App 373, 92 NE 691) and an adult child *(see, Hylo v Michigan Sur. Co.,* 322 Mich 568, 34 NW2d 443) have been allowed to recover irrespective of whether they were owed a legal duty of support. The essential principle extracted from these decisions is that a person who is, *in fact,* receiving support is entitled to sue for injury to "means of support" even though the deceased or injured person had no legal obligation to provide support *(see, Knierim v Izzo,* 22 Ill 2d 73, 174 NE2d 157; *Hylo v Michigan Sur. Co., supra; Flower v Witkovsky,* 69 Mich 371, 37 NW 364; *see also, McIsaac v Monte Carlo Club,* 587 So 2d 320, 324 [Ala] [other person category of plaintiffs " 'is as broad as proof of proximate cause will permit' "]). In *Ford v Wagner* (153 Mich App 466, 395 NW2d 72, *lv denied* 426 Mich 878), an intermediate appellate court in Michigan held that a man living with a woman without the benefit of marriage was not entitled to sue for an injury to his "means of support" under

Michigan's Dram Shop Act (Mich Comp Laws § 436.22 [5] [Mich Stat Annot § 18.993 (5)]). The court based its conclusion upon the absence of a legal duty to support and Michigan's nonrecognition of common-law marriages and strong public policy disfavoring the grant of property or support rights to unmarried cohabitants *(see, Ford v Wagner,* 153 Mich App 466, *supra,* 395 NW2d, *supra,* at 74-75). In our view, the *Ford* court's rejection of the right to sue because of the absence of a legal duty is inconsistent with controlling decisional law of the Michigan Supreme Court clearly recognizing suits by persons who had no legal entitlement to support but who were, in fact, receiving support *(see, Hylo v Michigan Sur. Co., supra; Flower v Witkovsky, supra; see also, LaBlue v Specker,* 358 Mich 558, 100 NW2d 445).

The absence of a legal entitlement to support is not, in our view, a proper basis to deny a person the right to sue for a loss of support under the Dram Shop Act.

## III

New York courts have recognized the right of parents to sue under the Dram Shop Act for an injury to their "means of support". However, our courts have not addressed whether persons having no legal right to support, but who are recipients of voluntary payments of support, are other persons entitled to recover for such an injury within the meaning and intent of the New York's Dram Shop Act (General Obligations Law § 11-101 [1]).

Clearly, the Legislature did not intend to limit the class of permissible plaintiffs to those specifically mentioned in the 1873 Act. Indeed, a contrary intent may be inferred from language in the 1873 Act authorizing recovery by "[e]very husband, wife, child, parent, guardian, employer *or other person"* (L 1873, ch 646, § 1; emphasis added). The 1873 Act was denominated "An Act to suppress intemperance, pauperism and crime". Its purpose was "to suppress the sale and use of intoxicating liquor and to protect and provide a remedy for dependents and persons injured by the unlawful sale of liquor" *(Matalavage v Sadler,* 77 AD2d 39, 43; *see also, Mead v Stratton,* 87 NY 493, 496-497; Joyce, Intoxicating Liquors § 420, at 476 [1910]). The statute provided for the recovery for injuries to means of support "without any restriction whatever" *(Mead v Stratton, supra,* at 496). "The injury to the means of support was one of the main grounds of the action,

and when the party is deprived of the usual means of maintenance, which he or she was accustomed to enjoy previously, by or in consequence of the intoxication or the acts of the person intoxicated, the action can be maintained" *(Mead v Stratton, supra,* at 496).

■ The Dram Shop Act is both penal and remedial in nature *(see, Playford v Perich,* 2 Misc 2d 170; *Wilcox v Conti,* 174 Misc 230). Although in some contexts it is to be narrowly construed *(see, Delamater v Kimmerle,* 104 AD2d 242, *supra; Wright v Sunset Recreation,* 91 AD2d 701, 702),. the statute should be interpreted "according to its true intent and meaning, having in view the evil to be remedied and the object to be obtained" *(Mead v Stratton, supra,* at 496; *see also, Wilcox v Conti, supra).* Generally, in deciding whether a person has the right to sue, courts have emphasized the remedial nature of the statute and have applied an expansive interpretation *(see, e.g., Matalavage v Sadler,* 77 AD2d 39, 43, *supra).* Each plaintiff, though not married to her companion, lived with him as husband and wife, and the children were raised in a family unit. Each plaintiff alleges that she was dependent upon her companion for support. Recognition of the right of plaintiffs in such status to maintain an action for injury to their "means of support" is consistent with the remedial nature of the statute *(see, Matalavage v Sadler,* 77 AD2d 39, 43, *supra; Wilcox v Conti, supra)* and with the statute's intent and purpose to compensate those persons who are deprived of their accustomed means of support *(see, Mead v Stratton, supra).* Such recognition also furthers the object of correcting certain evils resulting from the intemperate indulgence in intoxicating beverages, such as the impoverishment of families and the creation of public assistance burdens *(see, Matalavage v Sadler, supra).* Although New York does not recognize the enforceability of property and support rights between unmarried cohabitants absent some contractual relationship *(see, Morone v Morone,* 50 NY2d 481), the nonrecognition of common-law marriages is not grounded in public policy so strong that it outweighs the aforesaid public policy objectives of the Dram Shop Act.

■ Moreover, although the divorce decree did not direct Rivera to pay spousal maintenance to Soto, he had a continuing legal duty to provide spousal maintenance depending upon her needs and a consideration of other statutory factors *(see,* Domestic Relations Law § 236 [B] [6]). Soto's status as a former spouse was sufficient, by itself, to entitle her to sue for loss of

her "means of support" *(see, Brannstrom v Tippman,* 141 Mich App 664, 367 NW2d 902).

## IV

▮ Supreme Court also erred in refusing to permit plaintiffs to maintain this action upon the ground that the damages would be too remote and speculative. At trial, plaintiffs "are entitled to have the jury weigh all the direct and inferential evidence relating to their loss of 'means of support'. The jury may consider both the evidence of the support decedent[s] provided to the plaintiffs before [their] death[s] and evidence of the support the plaintiffs could reasonably have expected but for [their] death[s]" *(Valicenti v Valenze,* 68 NY2d 826, 829; *see also, Raynor v C.G.C. Grocery Corp.,* 159 AD2d 463, *supra).* The damages in this case will be no more remote or speculative than damages recoverable by a parent for the loss of support by a child *(see, e.g., Raynor v C.G.C. Grocery Corp., supra)* or the damages recoverable by a grandchild for the loss of support by a grandmother *(see, Gonzalez v New York City Hous. Auth.,* 77 NY2d 663).

On this appeal we determine only that plaintiffs are entitled to sue in their individual capacities for the alleged injury to their "means of support". Plaintiffs, in their representative capacity, have obtained an award of damages for their children's loss of support. The record before us reveals that Rivera and Echevarria provided moneys for the support of their respective households. Consequently, it will be necessary for plaintiffs to demonstrate at trial that the money they received, or certain portions thereof, were for spousal support and not for the support of the children.

DENMAN, P. J., CALLAHAN, LAWTON and DAVIS, JJ., concur.

Order unanimously reversed, on the law, with costs, and motions denied.