MARY M. GOOD *v.* CHARLES W. TOWNS AND CHARLES SULLIVAN.

MARY E. GOOD, BY n. f. *v.* THE SAME.

*Action on Statute, R. L. s. 3833. Seller of Intoxicating Liquor, when liable for Damage.*

1. A *legal* dependency is necessary to constitute a right of action under the statute, R. L. s. 3833, giving an action to one dependent on a person whose death was caused by intoxicating liquors illegally furnished; thus, if the action is brought by one claiming to be the widow of such person, it is incumbent on her to prove that her marriage was lawful; or, if by a child, that he was legitimate.
2. The statute gives the right of action to one dependent on such intoxicated person for support.

ACTION given by R. L. s. 3833. Trial by jury, September Term, 1882, Windham County, ROWELL, J., presiding. Verdict

ordered for the defendants. The plaintiff offered to prove that the defendant Towns was the proprietor of a hotel in Bellows Falls; that he kept a bar in his hotel, at which intoxicating liquor was sold, and that the defendant Sullivan tended the bar for him; that Sullivan unlawfully sold said liquor to one Peter Good who drank such quantities of it that he died in consequence thereof. She also offered to prove that said Good was married to one Mary E. Marcy in 1854, and that she lived with him as his wife till the summer of 1867, when she left him, and at the time of his death in 1881, she was living in Worcester, Mass., with another man as his wife, and between whom the ceremony of marriage was performed in 1872; that no divorce had been granted to said Good or his wife; that the said Mary E. was not dependent on said Good for her support, and that she made no claim on his estate, and none on the defendants; that soon after said Good's wife left him, he procured this plaintiff, Mary M., then about fourteen years of age, to work for him as his housekeeper; that she lived with him as his wife till the time of his death; that at that time she was the mother of seven children, and two days after his death she gave birth to an eighth child, and that said Good was the father of said children; that after the birth of the first child, the ceremony of marriage was performed between the said Good and the said plaintiff, Mary M., and that she understood that he had been divorced from his first wife; that said Good acknowledged the seven born previously to his death to be his children, and furnished a home and support for them; that said Good treated and acknowledged said plaintiff, Mary M. as his wife in the community where they lived; that he had supported her, and would have continued to do so, had he lived; and that she was dependent on him for support.

Mary E. Good brought her action by her next friend, Mary M. Good. In this suit, the plaintiff offered to prove substantially the same facts that Mary M. did in her suit; and that she was the child, about thirteen years old, of the said Peter and Mary M. Good; that ever after her birth said Peter had

acknowledged that he was her father, that he treated her as his child, furnished her a home, supported her, and would have continued to do so had he lived; and that she was dependent on the said Peter for support.

*Bridgman & Weston* and *C. B. Eddy*, for the plaintiffs.

The statute seeks to accomplish two purposes, first, to deter persons from violating chap. 169 R. L.; second, to give a remedy to persons injured in consequence of the violation of such penal provisions. The statute created a remedy where there was none before; and is to be liberally construed toward effectuating its purpose. WHEELER, J., in *Smith* v. *Wilcox*, 47 Vt. 537. The provision is a sweeping one, and affords no door of escape from damages. It is not a question of the *character* of the dependency; but whether the plaintiff *was in fact* dependent upon the deceased person. It is manifest, from the history of this statute, it having been before the legislature three times, that it was not the legislative intention to narrow the ground of liability.

The plaintiff's marriage has no connection whatever with the offense charged. *Stanton* v. *Simson*, 48 Vt. 628; 43 Md. 513.

As to the child: The old severity of the common law in relation to the rights of illegitimate children, and the duties and obligations of the fathers of such, no longer exists. The common law has in various ways been modified by statutes. Independent of such statutes, the tendency of courts in modern times, has been towards a more liberal policy, and to the establishment of doctrines more in accordance with the principles of humanity and natural justice.

Peter Good, having from the birth of the plaintiff, adopted and recognized her as his child, and furnished her a home and a support, had thereby become legally bound to support her and to continue that recognition, adoption and support. But whether this be so or not, he had a moral and legal right to do so, and as the case shows he would have so done, it follows that defendants, by their wrongful and criminal act, have deprived her of what she would have obtained from her father. 2 Kent Com. (6th

Good *v.* Towns and Sullivan.

ed.) 215; Sch. Dom. Rel. (3d ed.) s. 279; *Hesketh* v. *Gowing*, 5 Esp. 131; 12 N. Y. 530; 46 Iowa, 195.

*James Barrett* and *L. M. Reed*, for the defendants.

The statute gives the right of action only to one dependent on the person whom the intoxicated person kills or disables. *Hollis* v. *Davis*, 56 N. H. 74.

*Dependent*, as used in the statute, means, and can mean only, a *legal* dependency—a dependency that the party depended on is legally bound to respond to. A father is bound to support his legitimate minor children. Such children are *dependent* upon him. This dependency is the correlative of such legal duty of the father. The father of illegitimates is not bound to support them. So they are not *dependent* on him; that is, they have no claim that the law recognizes for support by him. *Dependency* can be predicated only of such as can assert a right to be supported against a party whom the law charges with the duty of rendering such support. Sch. Dom. Rel. s. 279, p. 384-5; *Dickinson* v. *North Eastern R. R. Co.*, 2 H. & C. 735; 2 Kent Com. 192; *Gordon* v. *Potter*, 17 Vt. 348; *Varney* v. *Young*, 11 Vt. 258; *Bacon* v. *McBride*, 32 Vt. 585; 6 Vt. 91; R. L. ss. 2232, 2396, 2404, 2423, 2821.

The opinion of the court was delivered by

ROWELL, J. The first point made by the defendants is, that the statute* gives a right of action, not to one dependent for support on the intoxicated person who dies or is disabled, but to one thus dependent on the person whom the intoxicated person kills or disables; and such is the construction given to a similar statute in New Hampshire. *Hollis* v. *Davis*, 56 N. H. But in *Rich-*

---

* "When a person, by reason of intoxication, commits or causes an injury upon the person or property of another, a person who by himself, clerk, or servant, unlawfully sold or furnished any part of the liquor causing such intoxication, shall be liable to the party injured for the damage occasioned by the injury so done," etc. "In case of the death or disability of a person, either from such injury or in consequence of intoxication from the use of liquors so unlawfully furnished, a person who is in any manner dependent on such injured person for means of support, or a person on whom such injured person is dependent, may recover from the person unlawfully selling or furnishing any such liquor the damage or loss sustained in consequence of such injury." R. L. s. 3833.

*ards* v. *Moore*, heard at the January Term, 1882, in Franklin County, this court held that the statute gave a right of action to one dependent on the intoxicated person, and we are not disposed to overrule that decision.

The next question is, What is the character of the dependency that gives this right of action? Plaintiffs contend that a dependency *in fact* is sufficient though it may not be a *legal* dependency, and that here was a *legal* dependency in the case of the child at all events. Defendants, on the other hand, contend that nothing short of a dependency that the party depended upon is legally bound to respond to is sufficient, and that here was no such dependency as to either plaintiff.

As to the plaintiff Mary M. Good, it needs no argument to show that Peter Good was under no legal obligation to her to support her. His marriage to her was void; and as between the parties thereto it imposed none of the legal obligations of lawful matrimony. But as to third persons, a man who marries a woman and holds her out to the world as his wife, cannot discharge himself from liability for necessaries supplied her by proving a previous lawful marriage to another woman still living: Watson *v.* Threlkeld, 2 Esp. 637; Robinson *v.* Nahon, 1 Camp. 245. But he is not liable for necessaries furnished her after separation and ceasing to hold her out as his wife: *Munro* v. *De Chemant*, 4 Camp. 215. So in *Norwood* v. *Stevenson and wife*, cited in a note to *Munro* v. *De Chemant* from Andrews, 227, it was held that a plea by the husband that "they were never joined in *lawful* matrimony," was no bar to an action against him and his wife for her debt contracted when sole, for that a marriage *de facto* made him liable.

As to the plaintiff Mary E. Good, she is an illegitimate child of the deceased; and as to such a child, it is clear that the common law imposes no liability on the father as such to support it. But he is liable on his express promise for its support. He is also liable on his implied promise, without an order of affiliation, provided he has adopted the child as his own and acquiesced in any particular disposition of it. But he may renounce the adop-

tion and terminate the implied assumpsit. This is the result of the cases, English and American: *Hesketh* v. *Gowing*, 5 Esp. 131; *Cameron* v. *Baker*, 1 C. & P. 268; *Nichole* v. *Allen*, 3 C. & P. 36; *Furillio* v, *Crowther*, 7 D. & R. 612; *Moncrief* v. *Ely*, 19 Wend. 405. Otherwise than this, the father is not liable except he be made so by an order of affiliation; and then his liability is not to the child, but is imposed by way of helping the mother or indemnifying the town.

It is true, as contended, that the language of the statute is broad, " *in any manner dependent;*" but after all we think it should be construed to mean a *legal* dependency only, the same as though it read, "in any manner *legally* dependent." If it is given greater scope than this, there would be great difficulty in administering it. There would seem to be no stopping-place short of including all possible cases of actual dependency, whatever the relation of the parties, and notwithstanding the absence of even a moral obligation to support; and yet no one we presume would contend for so latitudinarian a construction of the statute. Shall we then stop at the utmost limit of moral obligations? But the law cannot determine what a moral obligation is, and takes no cognizance of them. Again, by what rule shall damages be assessed in cases where as here no legal right has been lost?

This is not a question on which much authority can be adduced, but the case of *Dickinson* v. *The North Eastern Railway Company*, 2 H. & C., 735, is worth refering to. That was an action under the Civil Damage Act of 9 and 10 Vict. c. 93, which provides that the action shall be for the benefit of the wife, husband, parent and *child* of the person killed. Price contended that " child,' as used in the statute, included an illegitimate child; that the legislature intended the right of action to be co-extensive with the moral obligation to support; and that the legal right to support could not be the test of what class of persons could maintain the action. But POLLOCK, C. B., said it was beyond all doubt that in the construction of that act the word

" child " meant legitimate child only ; and a rule for a new trial was refused.

The result is in both cases, judgment affirmed.