**Ken Thompson, Annette Potwin and Ashley and Tessa Thompson v. Dewey's South Royalton, Inc., Erlina Gay Farrington, Merle Howe, Mark Nemeth, So. Royalton House, Inc., Michael Brown and Thomas Powers**

[733 A.2d 65]

No. 97-273

Present: **Amestoy, C.J., Morse, Johnson and Skoglund, JJ., and Corsones, D.J., Specially Assigned**

Opinion Filed May 21, 1999

*James A. Dumont* of *Keiner & Dumont P.C.*, Middlebury, for Plaintiff-Appellant Thompson.

*Michael F. Hanley* and *Barney L. Brannen* of *Plante, Hanley & Brannen, P.C.*, White River Junction, for Plaintiff-Appellant Potwin.

*David H. Bradley* and *David R. Putnam* of *Stebbins, Bradley, Wood & Harvey, P.A.*, Hanover, New Hampshire, for Defendants-Appellees Dewey's South Royalton, Inc., Farrington, Howe and Nemeth.

*Robert G. Cain* and *John G. Beiswenger* of *Paul, Frank & Collins, Inc.*, Burlington, for Defendants-Appellees South Royalton House, Inc. and Brown.

*J. Christopher Callahan* and *Tracy Kelly* of *Richards and Brady, P.C.*, Springfield, for Defendant-Appellee Powers.

**Morse, J.** Plaintiffs instituted this action under the Dram Shop Act (DSA), 7 V.S.A. § 501, against two licensed vendors of alcoholic beverages, seeking damages resulting from an intoxicated person's death. The trial court granted defendants' motion to dismiss, see V.R.C.P. 12(b)(6), ruling that plaintiffs, who were third persons injured as a consequence of an imbiber's death, did not have a cause of action under the DSA. We reverse.

The salient facts pled in the complaint are as follows. See *Amiot v. Ames*, 166 Vt. 288, 291, 693 A.2d 675, 677 (1997) (allegations of nonmoving party must be accepted as true in reviewing motion to dismiss). Defendants are two South Royalton bars — Dewey's South Royalton and South Royalton House — their owners, and some of their employees.[1] In June 1995, after spending the evening drinking

---

[1] Pursuant to V.R.C.P. 41(a)(1)(ii), plaintiff Annette Potwin, individually and in her capacity as guardian of the persons and property of Ashley and Tessa Thompson, and in her capacity as administratrix of the estate of Mickey Lee Thompson, stipulated to

excessively at both of defendants' bars, Mickey Lee Thompson (decedent) was injured in a car accident. He died three weeks later from injuries sustained in the accident. Plaintiffs filed claims under the DSA to recover for the injuries they suffered to their "person [and] means of support" as a result of decedent's death "in consequence of [his] intoxication." 7 V.S.A. § 501(a).

Plaintiffs include Annette Potwin, Ashley Thompson, Tessa Thompson, and Ken Thompson. Decedent lived with his partner Annette Potwin (the two were not married), and her daughter, Ashley, for over seven years, until the time of his death. Although Ashley was not decedent's biological daughter, she regarded decedent as her father and used his last name as her own. Decedent provided financial support to both Annette and Ashley. Tessa Thompson was born to decedent and Annette Potwin in February 1994. Decedent provided physical, moral, and intellectual support and training for both Tessa and Ashley. Ken Thompson is decedent's father. Father and son planned to commence a woodworking business together later in the summer of 1995.

All of the plaintiffs sought damages for loss of decedent's companionship and loss of means of support. Annette Potwin and her two children also sought damages for the loss of physical, moral, and intellectual training. In addition to the instant action, Annette Potwin, as the administrator of decedent's estate, filed a common law negligence claim against the same defendants under the Wrongful Death Act. See 14 V.S.A. §§ 1491-1492.

In granting defendants' motion to dismiss plaintiffs' claims, the court concluded: "Just as [decedent] had no cause of action under the DSA, the DSA likewise does not provide his relatives a remedy for their *derivative* claim." (Emphasis added.) This appeal followed.

The issues on appeal concern questions of law, and thus our "review is nondeferential and plenary." *Godino v. Cleanthes*, 163 Vt. 237, 239, 656 A.2d 991, 992 (1995). First, we address whether the DSA provides an independent and direct right of recovery to third persons injured as a consequence of an imbiber's death. Because we find that it does, we next address whether plaintiffs here are within the class of claimants entitled to recover under the DSA. Finally, we consider the range of damages available to third persons injured as a consequence of an imbiber's death.

---

the dismissal with prejudice of all claims against defendant Thomas Powers, owner of the property at which Dewey's is located. Plaintiff Ken Thompson did not join this stipulation of partial dismissal.

## I.

Relying on a plain meaning interpretation of the DSA, plaintiffs allege that the DSA provides them a *direct* cause of action against defendants. The DSA states in pertinent part:

A spouse, child, guardian, employer or other person who is injured in person, property or means of support by an intoxicated person, or in consequence of the intoxication of any person, shall have a right of action in his or her own name, jointly or severally, against any person or persons who have caused in whole or in part such intoxication by selling or furnishing intoxicating liquor:

. . . to a person apparently under the influence of intoxicating liquor; [or]

. . . to a person whom it would be reasonable to expect would be under the influence of intoxicating liquor as a result of the amount of liquor served by the defendant to that person.

7 V.S.A. § 501(a). Plaintiffs contend that they have been injured "in person [and] means of support . . . in consequence of the intoxication" of decedent.

Defendants, on the other hand, contend that only third persons injured *by* an intoxicated person may recover under the DSA. Their position is predicated on this Court's holding in *Langle v. Kurkul*, 146 Vt. 513, 515-16, 510 A.2d 1301, 1303 (1986), where we held that an intoxicated person who caused injury to himself could not recover damages against the alcohol supplier under the DSA. In reaching this result, we further explained that "the [DSA] gives a cause of action only to third persons who are injured by an intoxicated person." *Id.* at 516, 510 A.2d at 1303. Defendants conclude, therefore, that because plaintiffs here were not injured by Mickey Thompson, the intoxicated person, they are precluded from recovering under the DSA. In addition, they argue that plaintiffs' cause of action is derivative of decedent's, and because the decedent is barred from recovering under the DSA, plaintiffs also are precluded from recovering.

We find, however, that defendants' argument does not square with the plain meaning of the statute or with precedent. The statute itself has two provisions, each providing a separate ground for relief. First, persons who are injured "by an intoxicated person" have a right of action. 7 V.S.A. § 501(a). Second, persons who are injured "in

consequence of the intoxication of any person" have a cause of action. *Id.* Plaintiffs in this case rest their claims on the latter provision; *Langle* concerned our interpretation of the former and thus is not controlling here.

In recent years, this Court has not had occasion to address head-on whether third parties related to an imbiber have a direct cause of action for their injuries sustained "in consequence of" the imbiber's death. In construing the same language in an earlier version of the statute, however, we held that a wife could recover against a liquor vendor for the loss of her means of support where her husband died as a consequence of his intoxication. See *Healey v. Cady*, 104 Vt. 463, 466-67, 161 A. 151, 152 (1932) (interpreting 1917 G.L. § 6579).[2] This Court recognized in *Healey* the two provisions of the statute — "one giving a right of action for injury caused *by* an intoxicated person, and . . . one giving the right of action for injury caused *in consequence* of the intoxication of *any person*" — and concluded that wife's claim (like the claims in the instant case) stood on the latter provision. *Id.* at 468, 161 A. at 152.

*Healey* reflects a widely accepted policy that the relatives of an injured or deceased imbiber may recover under dram shop laws because they, unlike the imbiber, are considered innocent third parties who did nothing to contribute to the injury. See, e.g., *Valicenti v. Valenze*, 499 N.E.2d 870, 871 (N.Y. 1986) (husband and minor children of intoxicated decedent had cause of action for loss of "means of support" under dram shop act); *Matalavage v. Sadler*, 432 N.Y.S.2d 103, 107 (App. Div. 1980) (minor child of intoxicated person who was killed by reason of his intoxication has cause of action under dram shop act); cf. *Hannah v. Chmielewski, Inc.*, 323 N.W.2d 781, 782-83 (Minn. 1982) (wife of police officer injured by intoxicated person can recover under dram shop act even when "Fireman's Rule" barred her husband from maintaining such action on his own behalf).

Defendants, on the other hand, contend that a more recent case suggests that the relatives of an innocent person killed by an imbiber, as well as the relatives of an intoxicated decedent, are not entitled to

---

[2] 1917 G.L. § 6579, the Dram Shop Act in effect at that time, provided:

> A husband, wife, child, guardian, employer or other person who is injured in person, property or means of support by an intoxicated person, or in consequence of the intoxication of any person, shall have a right of action in his or her own name, jointly or severally, against a person or persons, who, by selling or furnishing intoxicating liquor, have caused in whole or in part such intoxication. . . .

recover under the DSA. In *Clymer v. Webster*, 156 Vt. 614, 620, 596 A.2d 905, 909 (1991), we noted that, aside from minor medical and funeral bills, the parents of an adult child killed by a drunk driver were "not themselves . . . injured 'in person, property or means of support' within the meaning of the DSA." The focus of that case, however, concerned the remedies available when the decedent herself was injured "in person," unlike the decedent in *Langle*, and therefore would have been entitled to maintain an action under the DSA had she survived. See *Clymer*, 156 Vt. at 620, 596 A.2d at 909. We concluded that the parents and decedent's estate were entitled to recover wrongful death damages. Defendants infer from *Clymer* that the relatives of a person killed by an imbiber have only a derivative cause of action.

Defendants' interpretation of *Clymer* does not reflect the true context of the issues on appeal in that case. A more accurate reading of *Clymer* reveals that we simply did not address whether the parents had a direct cause of action under the DSA. Given the focus of our opinion, then, the more reasonable inference to be drawn from *Clymer* is that the parents were not injured "in person, property or means of support" as a result of their eighteen-year-old daughter's death.

■ Accordingly, we find that the plain language of the statute and our previous decisions interpreting an earlier but similar version of the statute support our holding that the relatives of a deceased imbiber have an independent and direct right of recovery.

## II.

Next, we address whether decedent's father, Ken Thompson, decedent's unmarried partner Annette Potwin, and her child Ashley Thompson, are within the potential class of claimants enumerated in the DSA. The Act provides that "[a] spouse, child, guardian, employer or other person who is injured . . . shall have a right of action." 7 V.S.A. § 501(a). It is undisputed that Tessa Thompson, as decedent's biological child, is within that class of protected claimants.[3] Plaintiffs (other than Tessa) assert that they are also entitled to recover for "loss of means of support" under the broad statutory catch-all of

---

[3] Defendants argued that none of the plaintiffs have a direct cause of action under the DSA; however, they conceded that if this Court found otherwise, as we have done, then decedent's biological daughter is a potential claimant because decedent had a legal duty to support her.

"other persons." They rely on several sister-state decisions construing identical dram shop provisions to mean *any* other person injured by the intoxication of another. See *Lefto v. Hoggsbreath Enters.*, 581 N.W.2d 855, 857 (Minn. 1998) (holding that injured party's fiancee and her daughter were included within broad scope of "other person" under state's dram shop act); *Rodriguez v. Solar of Mich., Inc.*, 478 N.W.2d 914, 921 (Mich. Ct. App. 1991) (step-children and step-grandchildren were "other persons" entitled to seek recovery under state dram shop act).

Defendants, in response, contend the the DSA limits the class of persons entitled to recover to those legally entitled to financial support from the injured person. Defendants rely on *Good v. Towns*, 56 Vt. 410 (1883), which construed an earlier version of the DSA that extended recovery to any "person who is in any manner dependent" on the injured party. The *Good* Court held that "dependent" meant *legally* dependent, and therefore that the plaintiff and her illegitimate daughter — who had lived with the injured party as his wife and daughter but could not prove a legal marriage — were ineligible to recover under the act. *Id.* at 415-16.

Since *Good*, amendments to the DSA have modified the language from any person "who is in any manner dependent" on the injured party to "spouse, child, guardian, employer or other person." Defendants note that in *Langle* we applied the rule of ejusdem generis to this portion of the statute, holding that the general term ("other person") should be construed to include only "those terms which are similar in nature to the enumerated terms." 146 Vt. at 515, 510 A.2d at 1303; see also *Vermont Baptist Convention v. Burlington Zoning Bd.*, 159 Vt. 28, 30, 613 A.2d 710, 711 (1992) (when construing enactment with series of terms, we apply rule of ejusdem generis to include only those things similar in character to those specifically defined). As we stated in *Langle*: "Since those persons listed in the Dram Shop Act stand in some special relation to the intoxicated person, the use of the term 'other person' in the Act must mean someone who is similarly situated." 146 Vt. at 515-16, 510 A.2d at 1303.

Although *Langle* did not explore the precise nature of that "special relation," defendants argue that the common denominator among the enumerated terms is the existence of a relation of legal dependence upon the injured party. Thus, although the express language of "dependence" on which *Good* relied has been removed from the statute, defendants argue that the effect remains the same. We note

that there is authority for the argument that some legally recognized right of support from the injured party limits the general term "other person." See *Ford v. Wagner*, 395 N.W.2d 72, 74 (Mich. Ct. App. 1986) (holding that cohabitant not married to injured party lacked standing under state dram shop act because he lacked "legal relationship to the injured person").

■ In this case, however, we need not definitively determine whether a legislatively recognized right of support constitutes a prerequisite to recovery under the Act. For even assuming, without deciding, that the more stringent standard governs, we conclude that all of the plaintiffs here satisfy the standard. With respect to decedent's father, the statute expressly includes "guardians" among the list of persons entitled to recover. A guardian is an individual charged with the legal duty of taking care of the person and property of another who, because of age or mental status, is incapable of doing so. See 14 V.S.A. §§ 2645, 3060. Parents are the "joint guardians" of their children. See 14 V.S.A. § 2641. Furthermore, although a parent or guardian does not have a civil right to the financial support of a ward or child, the law provides that a child with sufficient means who refuses to support a destitute parent may be subject to imprisonment and monetary penalties for the support of the needy parent. See 15 V.S.A. § 202. This reflects a legislative judgment that parents have some legal right to the support of an adult child, and therefore meet the more narrow standard for recovery under the DSA. Accordingly, we conclude that Ken Thompson, decedent's father, had standing to bring suit in this case. Of course, as explained more fully in the section which follows, he must still prove at trial that he was actually deprived of some "means of support" as a consequence of his son's death.

■ We conclude, similarly, that Annette Potwin, decedent's unmarried partner, and her daughter Ashley, fall within the more narrow definition of persons covered by the Act. As noted, decedent lived with both Annette and Ashley for over seven years, until his death, and provided both financial and emotional support. Under 15 V.S.A. § 294, the mother of minor children residing within the same household as a man unrelated to her and not otherwise liable to provide financial support may, nevertheless, seek support as though they were married. Whether this statute confers a legally enforceable right or not, it plainly embodies a legislative judgment that an individual in decedent's circumstances had an obligation to support

plaintiffs. See also 15 V.S.A. § 301 (setting forth policy of state that legal obligations of parents be established for benefit of all children).

Thus, we are satisfied that plaintiffs Annette Potwin and Ashley Thompson meet the more narrow standard for recovery. Accordingly, we need not decide whether the DSA broadly extends to "other persons" who have no legally recognized right of support.

## III.

Finally, we address the range of damages recoverable by third persons under the DSA.[4] Plaintiffs contend that they are entitled to recover under the DSA not only for the financial support they lost in consequence of imbiber's death, but also for his lost comfort, companionship and guidance. Defendants assert that plaintiffs' loss of companionship and loss of parental guidance claims are not recoverable because they are not available in a direct claim under the DSA. They assert that the range of remedies available under the DSA are limited and do not include the full range of damages available under the Wrongful Death Act (WDA). See 14 V.S.A. §§ 1491-1492.

We agree with defendants and conclude that third persons injured in consequence of the death or injury of an imbiber are only entitled to recover for their loss of means of support, if any, and not for loss of companionship and loss of parental training and guidance. This interpretation is consistent with the legislative history and purpose of the statute.

Vermont's original Dram Shop Act, 1880 R.L. tit. 30, ch. 169, § 3602, was enacted in 1874. It manifests the Legislature's intention to distinguish between the categories of statutory claimants and the types of damages they are entitled to recover. The first category of plaintiffs was comprised of those persons who are directly injured *in person or property* by an intoxicated person:

> When a person, by reason of intoxication, commits or causes an injury upon the person or property of another, a person who by himself, clerk, or servant, unlawfully sold or furnished any part of the liquor causing such intoxication, shall be liable to the party injured for the damage occasioned by the injury so done.

---

[4]The scope of damages available to plaintiffs was not decided by the court below and was not a subject of the motion to dismiss; however, the issue is bound to arise, and because plaintiffs and defendants addressed this issue on appeal, we decide it.

*Id.* The second category of plaintiffs encompassed third persons injured *in means of support* as a consequence of the death or disability of either an innocent or an intoxicated person:

> In case of the death or disability of a person, either from such injury or in consequence of intoxication from the use of liquors so unlawfully furnished, a person who is in any manner dependent on such injured person for means of support, or a person on whom such injured person is dependent, may recover from the person unlawfully selling or furnishing any such liquor the damage or loss sustained in consequence of such injury.

*Id.*

Like other early dram shop laws, Vermont's original act reveals an attempt "to correct the evils resulting from intemperate indulgence in intoxicating liquors, such as impoverishment of families, injuries to others, and the creation of public burdens." *Matalavage*, 432 N.Y.S.2d at 106 (citing Joyce, The Law Relative to Intoxicating Liquor 476 (1910)). "One major purpose of this type of statute was to protect the wife and children of an intoxicated person when they were deprived of their means of support as a result of his intoxication." *Id.* (citing Joyce, *supra*, at 476). In other words, the goal of such legislation concerned economic compensation and the preservation of financial stability within the families of a deceased imbiber. The laws did not afford a remedy for loss of companionship and parental guidance.

The Dram Shop Act was amended in 1902 to resemble more closely the version currently in effect.[5] However, we cannot conclude from this subsequent enactment that the Legislature intended to expand the scope of damages recoverable by third persons against tavern keepers. Had the Legislature intended to broaden the damages recoverable under dram shop actions, it could have included the phrase "pecuniary injuries" in the statute. See, e.g., *Lefto v. Hoggsbreath Enters.*, 567 N.W.2d 746, 750 (Minn. Ct. App. 1997), *aff'd*, 581 N.W.2d 855 (Minn. 1998) (interpreting Minn. Stat. § 340A.801, subd. 1 (1992), which permits a cause of action to "other

---

[5] 1902, No. 90, § 84, provided in pertinent part:

> A husband, wife, child, parent, guardian, employer or other person who is injured in person, property or means of support by an intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her own name . . . .

person[s] injured in person, property, or means of support, or who incur[] other pecuniary loss," as allowing recovery for loss of aid, advice, comfort, and protection).

For example, Vermont's WDA permits damages for "pecuniary injuries," 14 V.S.A. § 1492(b), which this Court has held does not limit recovery to purely economic losses. See *Mobbs v. Central Vt. Ry.*, 150 Vt. 311, 316, 553 A.2d 1092, 1095 (1988) ("the term [pecuniary injuries] has been held to contemplate compensation for lost intellectual, moral and physical training, or the loss of care, nurture and protection.").

We conclude that it would be an impermissible judicial enlargement of an existing cause of action if we construed the DSA to encompass "pecuniary injuries." See *Langle*, 146 Vt. at 520, 510 A.2d at 1305-06 ("Our Court should not recognize a new cause of action or enlarge an existing one without first determining whether there is a compelling public policy reason for the change."). We believe that this construction of the DSA is supported by public policy and precedent.

█ Accordingly, we find that claimants here are entitled only to loss of means of support, and that this is a matter to be determined by the factfinder at trial. See *Valicenti*, 499 N.E.2d at 871 (holding that husband and minor children of intoxicated decedent "are entitled to have the jury weigh all the direct and inferential evidence relating to their loss of 'means of support'").

*Reversed and remanded.*

**Amestoy, C.J.,** dissenting. Because plaintiffs Ken Thompson, Annette Potwin, and Ashley Thompson purportedly satisfy the "more rigorous" standard urged by defendants, the majority declines to decide whether a legal relation of financial dependence is necessary to sue for loss of support under the Dram Shop Act (DSA), 7 V.S.A. § 501. I am not persuaded that plaintiffs here satisfied this standard. Indeed, there is so little support for a finding of legal dependence in this case that it is difficult to conceive of any case where the necessary statutory predicate, however attenuated, could not be found. Accordingly, the warning sounded by this Court more than a century ago, on facts strikingly similar to the case at bar, becomes relevant once again: "There would seem to be no stopping-place short of including all possible cases of actual dependency, whatever the relation of the parties, and notwithstanding the absence of even a moral obligation to support . . . ." *Good v. Towns*, 56 Vt. 410, 415 (1883). So broad an expansion of the benefitted class under the DSA ought to be left to the

governmental branch principally responsible for its enactment and development, the Legislature. See *Clymer v. Webster*, 156 Vt. 614, 619, 596 A.2d 905, 908 (1991) (Legislature enacted DSA to create cause of action where none had previously been available under common law). Therefore, I respectfully dissent.

The operative language in the DSA provides: "A spouse, child, guardian, employer or other person who is injured in person, property or means of support by an intoxicated person, or in consequence of the intoxication of any person, shall have a right of action . . . ." 7 V.S.A. § 501(a). In *Langle v. Kurkul*, 146 Vt. 513, 515-16, 510 A.2d 1301, 1302-03 (1986), this Court concluded that the general term "other persons" must be interpreted with reference to the specific list of persons that precedes it, i.e., "spouse, child, guardian, employer." We held that the term "other person" includes only those "similar in nature" to the persons specifically listed. See *Vermont Baptist Convention v. Burlington Zoning Bd.*, 159 Vt. 28, 30, 613 A.2d 710, 711 (1992) (under principle of ejusdem generis, general term must be construed to include only terms similar in nature to enumerated terms). As we explained: "Since those persons listed in the Dram Shop Act stand in some *special relation* to the intoxicated person, the use of the term 'other person' in the Act must mean someone who is similarly situated." *Langle*, 146 Vt. at 515-16, 510 A.2d at 1303 (emphasis added).

In light of the Court's holding in *Langle*, I cannot agree with the majority that the meaning of "other person" remains an open question to be reserved for another day. Although *Langle* did not explore the precise nature of the requisite "special relation" to which it referred, it did, at a minimum, foreclose the possibility that "other person" means *any* other person who can demonstrate a loss of support. While other state courts have, to be sure, construed their respective dram shop acts in this open-ended fashion, see, e.g., *Lefto v. Hoggsbreath Enters.*, 581 N.W.2d 855, 857 (Minn. 1998), this Court, at least, is on record as favoring a more limited construction.

The actual meaning of the "special relation" referred to in *Langle* may be traced to the statutory precursor of the current DSA, which this Court definitively construed in *Good*. The version of the DSA at issue in that case provided, in case of the death or injury of a person in consequence of intoxication, a cause of action for any "person who is in any manner *dependent* on such injured person for means of support, or a person on whom such injured person is *dependent*." *Good*, 56 Vt. at 413 n.* (emphasis added). The question in *Good*, as

here, was whether a woman and her child who had lived with but were not legally related to the injured person could recover under the DSA.

The answer provided in *Good* was direct, clear, and compelling. "[W]e think it should be construed to mean a *legal* dependency only." *Id.* at 415. In so holding, the Court noted that the alternative of allowing recovery to any person "in any manner dependent" upon the injured party could encompass a virtually unlimitable class. *Id.* Thus, the Court declined to read so "latitudinarian a construction" into the statute. *Id.*

Although the language of the DSA has since evolved into its current form, there is no evidence that the meaning ascribed to the statute in *Good* has changed. All of the persons currently enumerated in the statute enjoy an historically recognized legal relationship with the injured party involving a level of dependence that would be directly impaired as a result of the improper sale or furnishing of intoxicating liquor. See 15 V.S.A. §§ 202, 291 (duty of married persons to support spouse); 15 V.S.A. §§ 202, 293, 294, 301 (duty of parents and stepparents to support minor child); 14 V.S.A. § 2653 (guardian's duty of care and maintenance of minor); see also *Ford v. Wagner*, 395 N.W.2d 72, 74 (Mich. Ct. App. 1986) (holding that "other person" under state dram shop act is limited to persons who, like those specifically listed, have legal relationship with injured person). Although not a familial bond, the employer-employee relationship has similarly given rise to historically unique, reciprocal benefits and obligations. See *Lefto*, 581 N.W.2d at 858 n.1 (Stringer, J., dissenting).

The majority's attempt to pigeon-hole the individual plaintiffs here (with the exception of the decedent's biological daughter, Tessa) into the class of legal dependents is unpersuasive. The law imposes no civil obligation upon an adult child to support a parent, and 15 V.S.A. § 202 imposes criminal penalties for nonsupport only in the limited circumstances where the parent is destitute and unable to support himself or herself. Plaintiff Ken Thompson, decedent's father, has not shown that he falls within this narrow exception. Accordingly, I would not accord him standing under the Act. Similarly, there is no general legal obligation to support an unmarried cohabitant or the children of an unmarried cohabitant. Cf. 15 V.S.A. §§ 293, 296 (duty of stepparents to support stepchild). The "man in the house" statute on which the majority relies, 15 V.S.A. § 294, has never been held to create a legal duty of support for an unmarried cohabitant or that person's child. Thus, it falls well short of the legal-dependency standard necessary for recovery under the DSA.

Although the majority purports to leave for another day the question of whether the DSA broadly extends to "other persons" who have no legally recognized right of support, its holding this day provides a troublesome answer. By significantly dimming the bright line of legal dependency, the predictability essential to orderly application of the DSA is eroded. Furthermore, far from benefitting the limited class of financial dependents for whom the statute was clearly intended, the Court's ambiguous expansion of claimants may dilute the potential judgment pool, contrary to the interests of those the Legislature deemed most severely in need.

Absent a clear legislative mandate expanding the definition of "other persons" entitled to a cause of action under the DSA, I would — consistent with the precedent of this Court — limit the class of persons entitled to recover under the DSA for loss of means of support to those who were legally dependent on the injured party. The plaintiffs Ken Thompson, Annette Potwin, and Ashley Thompson were not legally dependent on the decedent. Therefore, I would affirm the judgment granting defendants' motion to dismiss.