2015 VT 47












Marshall v. State, Vermont State
Hospital (2014-107)

 

2015 VT 47

 

[Filed 06-Mar-2015]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 
 
 2015 VT 47
 
 


 


 
 
 No. 2014-107
 
 


 


 
 
 Jeffrey Marshall
 
 
 Supreme Court
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
 On Appeal from
 
 
 
 
      v.
 
 
 Superior Court, Washington Unit,
 
 
 
 
  
 
 
 Civil Division
 
 
 
 
  
 
 
  
 
 
 
 
 State of Vermont, Vermont State
 Hospital
 
 
 September Term, 2014
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 Helen
 M. Toor, J.
 
 
 
 
  
 
 


Patricia K. Turley and Stephen L. Cusick
of Zalinger Cameron & Lambek,
P.C., Montpelier, for

  Plaintiff-Appellee.

 

Stephen D. Ellis and William J. Blake, IV of Ellis Boxer
& Blake PLLC, Springfield, 

  for Defendant-Appellant.

 

PRESENT:  Reiber, C.J.,
Dooley, Skoglund and Robinson, JJ.,
and Durkin, Supr. J., 

                    
Specially Assigned

 

 

¶ 1.            
REIBER, C.J.   This appeal follows a dispute over an
order based on a worker’s compensation agreement.  Claimant injured his
back in 2002.  Claimant received an 8% whole-person impairment rating,
with 6% of that rating referable to a previous injury.  Based on this
rating, claimant executed an Agreement for Permanent Partial Disability
Compensation (Form 22) with his employer, the State, which the Commissioner of
the Department of Labor then approved.  Six years after the commissioner
ordered the award, claimant underwent two more permanency evaluations with
different doctors who both used a method that the first doctor had not
used.  Each of the subsequent evaluations resulted in higher whole-person
impairment ratings before consideration of the portion
attributable to any pre-existing impairment.  Based on the higher ratings,
claimant made a claim for additional benefits related to the 2002 injury. 
Claimant asserted that the award should be modified because his medical
condition had worsened, or, alternatively, that the parties had based their
Form 22 agreement upon a material mistake of fact.  The commissioner ruled
in the State’s favor.  Claimant then appealed to the superior court, which
reversed the decision of the commissioner and awarded claimant additional
benefits after a bench trial.  We vacate the decision of the superior
court as to the issues on appeal.

I.

¶ 2.            
The following facts were found by the commissioner and the superior
court and are undisputed, unless noted otherwise.  Claimant worked at the
Vermont State Hospital as a psychiatric technician and ward aide.  His
duties involved lifting and dealing with patients who could be combative. 
Claimant suffered work-related injuries on three separate occasions in 1987, 1992,
and 1997.  All of these claims related to low back pain in the L5-S1
region of his spine, with radicular symptoms down claimant’s
left leg.  Claimant underwent surgery after each of these injuries and
returned to work.  After the 1992 injury, claimant’s surgeon rated him
with a 10% permanent impairment to his spine, and the State began paying
permanent partial disability benefits.  There was no new rating for the
1997 injury.

¶ 3.            
In June 2002, claimant assisted a coworker in restraining a self-abusive
patient.  At one point, the patient lifted both legs off the floor,
putting his entire weight on claimant and his coworker.  Claimant
immediately experienced low back pain, with sciatic pain radiating down both
legs.  Claimant’s symptoms after the 2002 injury differed from the
previous three injuries in that low back pain predominated over radicular pain,
and he experienced radicular symptoms on both sides rather than just his left
side.  Following the 2002 injury, claimant did not have surgery and did
not return to his job at the hospital and was evaluated for a new work-related
injury claim.  

¶ 4.            
In a report issued in 2003, Dr. Maurice Cyr, claimant’s treating
chiropractor, concluded that claimant had reached a medical end result and
assigned a whole-person impairment rating of 5-8% for claimant’s lumbar spine
injury.  On the basis of this report, the parties entered into a Form 22
settlement agreement that identified claimant’s lumbar spine impairment as 8%
whole person, from which was apportioned 6% on account of claimant’s permanent
partial disability award for his 1992 injury.[1]  See 21 V.S.A. § 648(d) (“An
impairment rating determined pursuant to this section shall be reduced by any
previously determined permanent impairment for which compensation has been
paid.”).  The commissioner approved the agreement on February 3, 2004, and
awarded claimant benefits for the agreed-upon 2% permanent impairment
rating.  

¶ 5.            
Claimant continued to experience low back pain and radicular
symptoms.  In November 2004, an MRI revealed an L4-5 disc
herniation.  The injuries from 1987, 1992, and 1997 had all involved the
L5-S1 area of claimant’s spine.  An MRI taken in 2002 in connection with
the injury did not reveal any disc herniation at the L4-5 level.  Claimant
sought legal representation and in July 2008, consulted with Dr. Sikhar Banerjee.  Dr. Banerjee concluded that
claimant’s worsened symptoms related to the 2002 work injury and to the L4-5
disc herniation despite the results of the 2002 MRI and assessed a 13% whole
person impairment rating.  Initially, Dr. Banerjee evaluated claimant
using the diagnosis-related estimate (DRE) method, the same used by Dr. Cyr in
2002 to evaluate whole person impairment.  Subsequently, Dr. Banerjee
conducted a second evaluation using the range-of-motion (ROM) method and
assessed a whole-person impairment rating of 25%.  Dr. Banerjee
subtracted the 8% previously rated and paid in accordance with Dr. Cyr’s
impairment rating, leaving 17% additional whole-person impairment attributable
to the June 2002 injury.[2] 


¶ 6.            
The State’s expert, Dr. William Boucher, reached a different
result.  Dr. Boucher concluded that because claimant had prior lumbosacral
injuries and multiple surgeries, the ROM method—not the DRE method—was the
appropriate evaluation method for determining claimant’s impairment for the
2002 injury.  Dr. Boucher applied this method to the 2002 injury
evaluation conducted by Dr. Cyr and Dr. Banerjee’s initial evaluation that used
only the DRE method.  Dr. Boucher concluded that claimant likely had an 18% whole-person impairment as of May 2002.  Dr.
Boucher concluded claimant had a 20% whole person
impairment in 2010.  Based on a series of assumptions about the likely
range-of-motion deficits he thought claimant would have experienced after his
1997 surgery, Dr. Boucher concluded that claimant had an 18%
whole-person impairment prior to his June 2002 injury.  Subtracting 18% from
20%, Dr. Boucher concluded that claimant’s impairment from the 2002
injury gave rise to an additional whole-person impairment of 2%.  Using an
entirely different method, Dr. Boucher reached a result that agreed with Dr.
Cyr’s rating of 2% relating to the 2002 injury.  Dr. Boucher’s
result—2% impairment attributable to the 2002 injury—was consistent with the
Form 22 agreement executed by the parties and approved by the commissioner.[3]

¶ 7.            
Given the differences in the methods used and results of the three
whole-person impairment evaluations, claimant sought an award of additional
benefits relating to the 2002 injury.  Claimant argued to the commissioner
that the award in the 2004 Form 22 agreement should be modified because his
condition had worsened.  Alternatively—and primarily at issue on
appeal—claimant argued that the Form 22 agreement should be reformed under the
mutual mistake doctrine and that Dr. Banerjee’s rating should be substituted
for Dr. Cyr’s rating, as Dr. Cyr should have used the ROM method rather than
the DRE method in making the determination upon which the Form 22 was
based.  The commissioner concluded that claimant had failed to prove that
his worsened condition after 2008 related to his 2002 injury.  Thus, the
commissioner decided in favor of the State and declined to modify the award on
the ground of a change in condition.  

¶ 8.            
The commissioner also decided in favor of the State with regard to
claimant’s alternate argument that the Form 22 approved in 2004 was based on a
material mistake of fact.  The commissioner noted “that the ‘material
portion’ of the Form 22 at issue here concerns only the impairment rating to
which the parties agreed—8% whole person—not the methodology used to derive
it.”  Neither claimant nor the State introduced any evidence of what
claimant’s impairment rating would have been in 2002 had he been evaluated
using the ROM method at that time.  As the commissioner stated, based on
the evidence presented at the administrative hearing, “[i]t
is impossible to know . . . whether the 8% permanency to which the
parties ultimately agreed would have been higher, or lower, or perhaps just the
same.”  The commissioner added that even if Dr. Cyr’s interpretation of
the AMA Guides were mistaken, she could not characterize such an error
as a “mistake of fact” given how the process combines objective data with an
individual physician’s clinical judgment to produce an estimate.

¶ 9.            
Claimant appealed the commissioner’s decision in favor of the State to
the superior court.  The commissioner certified two questions to the
superior court: (1) whether claimant was entitled to additional medical
benefits referable to his 2002 injury; and (2) whether claimant was entitled to
additional permanent partial disability benefits as a consequence of the 2002
injury, and if so, based on what impairment rating.  During the superior
court proceedings, the State moved for partial summary judgment, arguing that the
superior court could not review the commissioner’s conclusion that a mistaken
permanent impairment rating is not a “material mistake of fact” that is a
ground for reforming a Form 22 agreement.  The superior court denied the
motion, and rendered its final merits ruling in February 2014.  The
court agreed with the commissioner that claimant was not entitled to benefits
related to the L4‑5 disc herniation, finding that the L4‑5 disc
herniation was not related to the 2002 injury.  However, the court ruled that
claimant is entitled to ongoing medical expenses relating to his ongoing back
and leg pain, as well as the numbness in his left foot.  

¶ 10.         The
superior court also decided in claimant’s favor regarding additional permanent
partial disability benefits, concluding that the Form 22 that served as the
basis of the commissioner’s 2003 award should be reformed under the
mutual-mistake doctrine.  The court was persuaded that because Dr. Cyr
used the DRE instead of the ROM evaluation method, the 8% impairment rating
given by Dr. Cyr was a material mistake of fact that justified reforming the
Form 22 agreement.  The court compared the impairment ratings given by Dr.
Boucher and Dr. Banerjee, and found the proper impairment rating to be 22%. 
Subtracting the 6% whole person impairment from the 1992 injury for which
claimant was previously compensated, the court found that claimant’s impairment
rating with respect to the 2002 injury should be 16%.  The court awarded
claimant benefits based on that figure, minus the 2% which he had already been
paid for the 2002 injury.  

II.

¶ 11.         Our
review of the superior court’s legal conclusions is “nondeferential
and plenary.”  Thompson v. Dewey’s S. Royalton, Inc.,
169 Vt. 274, 276, 733 A.2d 65, 67 (1999) (citation omitted).

¶ 12.         The
State argues that the superior court did not have “subject matter jurisdiction
to disregard the commissioner’s legal ruling that the [F]orm
22 is a final and binding resolution of the permanent impairment rating and may
not be rescinded on the basis of new medical opinions respecting the
rating.”  The workers’ compensation statute confers subject matter
jurisdiction over appeals from awards by the commissioner.  21 V.S.A. §§
670-72; Stoll v. Burlington Elec. Dep’t, 2009 VT 61, ¶ 5, 186 Vt. 127,
977 A.2d 1282 (citing 21 V.S.A. § 671).  The Legislature has bifurcated the process for these appeals: the superior court
may review questions of fact or mixed questions of fact and law.  21 V.S.A. §§ 670-71.  Dissatisfied parties may appeal
only pure questions of law directly to this Court.  Id.
§ 672. The certified question in this case involves a mixed question of
law and fact.

¶ 13.         A
claimant’s legal entitlement to permanent impairment benefits is based on a
factual situation—his or her medical condition, which forms the basis for his
or her impairment rating.  Expert testimony from medical
professionals—including their opinions as to what a claimant’s impairment
rating should be—is evidence that underlies the legal issue of whether that
claimant should receive benefits based on that impairment rating.  Both
objective measurements and clinical judgment inform the impairment
rating.  See AMA Guides at 2, 10, 18 (defining impairment and
describing physicians’ role in evaluating impairment).  Given the
intertwining of fact and law in the certified question, it was appropriate for
the superior court to review the commissioner’s decision in a de novo
retrial.  Travelers Indem.
Co. v. Wallis, 2003 VT 103, ¶ 11, 176 Vt. 167, 845 A.2d 316 (“[R]eview under 21 V.S.A. § 670 is de novo.” (citing Pitts
v. Howe Scale Co., 110 Vt. 27, 35, 1 A.2d 695, 698 (1938))).

III.

¶ 14.         The
State’s argument about subject matter jurisdiction is, in effect, a challenge to
the merits of the superior court’s decision—specifically, its conclusion of
material mistake of fact in the Form 22 agreement and the way it applied the
workers’ compensation rule that covers Form 22 agreements.  The rule
states that “[o]nce executed by the parties and
approved by the Division, these forms shall become binding agreements and
absent evidence of fraud or material mistake of fact the parties shall be
deemed to have waived their right to contest the material portions
thereof.”  Workers’ Compensation Rules § 17.0000, 3 Code of Vt. Rules 24
010 003 -14, available at http://www.lexisnexis.com/hottopics/codeofvtrules;
see also id. § 17.2000 (“Form 22 - Permanent Partial Disability
Agreement. This form shall be used in all cases in which the employee is deemed
to have suffered a permanent impairment as a result of a work-related
injury.”).

¶ 15.         The
superior court was required to exercise “traditional deference to the
commissioner’s interpretation of workers’ compensation statutes.”  Brown
v. W.T. Martin Plumbing & Heating, Inc., 2013 VT 38, ¶ 18, 194 Vt. 12, 72 A.3d 346.    Such deference is appropriate
where the superior court must interpret a rule promulgated under the workers’
compensation statute.  See Workers’ Compensation Rule § 17.0000 (including
Form 22 with forms “used to satisfy the requirements of 21 V.S.A. §§ 662(a) and
703”).  This case involves a highly specialized subject matter within the
commissioner’s expertise. 

¶ 16.         A
party seeking to set aside an approved Form 22 must meet a very high burden
under Rule 17.  The commissioner has held that once a Form 22 agreement is
executed, the impairment rating “[is] no longer subject to discussion or
dispute by either party.”  Coronis v.
Granger N. Inc., No. 16‑10WC, slip op. at 5 (Apr. 27, 2010),
http://labor.vermont.gov/wordpress/wp-content/uploads//CoronisMSJ.pdf. 
Upon approval by the commissioner or her designee, a Form 22 agreement “becomes
a binding and enforceable contract.”  Lushima
v. Cathedral Square Corp., No. 38-09WC, slip op. at 6 (Sept. 29, 2009),
http://labor.vermont.gov/wordpress/wp-content/uploads//LushimaDecision-1.pdf. 
Preventing parties from disputing an impairment rating after an agreement has
been approved “give[s] the Form 22 the certainty that Workers’ Compensation
Rule 17.0000 intended.”  Coronis, No. 16-10WC.  The commissioner has also found that
permitting parties to challenge the finality of a Form 22 agreement “would open
the floodgates of litigation and result in a chaotic loss of certainty in the procedures”
of the Department of Labor.  Catani v. A.J. Eckert Co., No.
28-95WC, slip op. at 5 (May 17, 1995).  The commissioner’s reasoning in
these cases militates against the conclusion that Dr. Cyr’s initial impairment
rating was a material mistake of fact that warrants setting aside the Form 22.
 The opinion held by experts who subsequently evaluated claimant—that Dr.
Cyr’s initial rating method did not conform to the AMA Guides—is not a
basis for determining that Dr. Cyr’s initial rating was a material mistake of
fact.[4]

¶ 17.         The
differences between Dr. Banerjee’s and Dr. Boucher’s impairment ratings in 2010
and Dr. Cyr’s impairment rating from 2003 are insufficient to serve as grounds
for reopening the original order for compensation.  An impairment rating
is an expert opinion that derives from measurable data taken at a specific
point in time, a person’s symptoms at the time of the evaluation, and the
medical evaluator’s professional judgment.  In the commissioner’s words,
an impairment rating is the result of a “process [that] combines objective,
scientifically based data with a physician’s clinical judgment to produce an
estimate that reflects the severity of an individual’s medical
condition.”  While it is true that each impairment rating is the result of
a standardized approach, an individual physician’s own judgment plays a very
significant role.  AMA Guides at 18 (“Performing an impairment
evaluation requires considerable medical expertise and judgment.”).

¶ 18.         Dr.
Banerjee and Dr. Boucher both acknowledged in their testimony before the
superior court that physicians may be required to make estimates regarding
impairment ratings.  The doctors also acknowledged that different doctors
looking at the same claimant’s medical records or data sets might come to
different opinions as to permanent impairment.  The difference between Dr.
Cyr’s impairment rating, on the one hand, and Dr. Banerjee’s and Dr. Boucher’s,
on the other, may be due to at least three factors.  First, Dr. Banerjee
and Dr. Boucher used the ROM method while Dr. Cyr used the DRE method.
 Second, Dr. Banerjee and Dr. Boucher conducted their evaluations in 2010,
whereas Dr. Cyr conducted his in 2003.  Third, the individual evaluators
may have exercised their clinical judgment in different ways.  Neither
party had credible evidence as to what claimant’s impairment rating would have
been had Dr. Cyr used the ROM method for his evaluation in 2003. 
Furthermore, the selection of a rating method itself is an exercise of clinical
judgment that is rooted more in opinion than objective fact. 

¶ 19.         We
conclude as a matter of law that the claimant in this case has failed to meet
his burden of demonstrating a mistake of fact sufficient to require reformation
of the approved Form 22.  The alleged mistake in Dr. Cyr’s rating method
does not warrant modification of an approved Form 22 agreement pursuant to Rule
17.  While we conclude here that Dr. Cyr’s allegedly mistaken medical
opinion is an insufficient basis for concluding that there has been a material
mistake of fact, we decline to hold that an impairment rating can never
be the basis for reforming a Form 22 agreement under the
material-mistake-of-fact doctrine.  We
hold only that the doctrine is not available under these facts.  

¶ 20.         In
light of this holding, we need not reach the question of whether the claim was
barred by the statute of limitations.

IV.

¶
21.        
The workers’ compensation statute entitles a prevailing claimant to
reasonable attorney’s fees if he prevails.  21 V.S.A. §
678(b).  Attorney’s fees are subject to the court’s approval. 
Id.  We agree with the State’s construction of the superior court’s
order that claimant was entitled to ongoing medical expenses for his S-1 injury
but not for his L4-5 disc herniation.  Insofar as the commissioner had
already ordered compensation for claimant’s medical expenses for his S-1
injury, claimant did not actually prevail on that issue in superior
court.  Thus, claimant has failed to prevail within the meaning of the
statute and is not entitled to attorney’s fees at this stage.

The superior court’s orders
entitling claimant to additional permanent partial disability benefits and
attorney’s fees are vacated and the matter is remanded to the superior court
for entry of judgment in favor of the State on these issues.  Claimant is
entitled to payment of ongoing medical expenses that relate to his S-1 injuries.

 


 
 
  
 
 
  
 
 
  
 FOR THE COURT:
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Chief
 Justice
 
 


 














[1]
 Claimant’s permanent impairment rating for the 1992 injury was 10% of the
spine, or 6% whole person.

 





[2]
 Dr. Banerjee’s “apportionment” analysis is distinct from but consistent
with the reduction required by 21 V.S.A. § 648(d).  Statutory
apportionment analysis requires that an impairment rating “be reduced by any
previously determined permanent impairment for which compensation has been
paid.”  The reduction is calculated in the actual award of permanent
partial disability benefits pursuant to a Form 22 settlement agreement or
litigation.  Dr. Banerjee conducted his medical apportionment analysis
pursuant to the American Medical Association’s Guides to the Evaluation of
Permanent Impairment.  G. Andersson & L.
Cocchiarella, American Medical Association, Guides
to the Evaluation of Permanent Impairment, 11 (5th ed. 2001) [hereinafter AMA
Guides].  Medical apportionment analysis “represents a distribution or
allocation of causation among multiple factors that caused or significantly
contributed to the injury or disease and resulting impairment.”  Id. 
The evaluating physician—not the hearing officer or judge—does this
apportionment with the goal of determining how much of a claimant’s permanent
impairment was caused by an injury for which he or she is seeking compensation.

 





[3] 
Dr. Boucher’s method contrasts with Dr. Banerjee’s method of accounting for
claimant’s prior injuries, which was consistent with—albeit distinct from—the
statutory apportionment analysis in 21 V.S.A. § 648(d).  Dr. Boucher made
assumptions about claimant’s presumed impairment prior to the June 2002 injury
without regard to whether claimant had previously received an impairment rating
that reflected any pre-2002 impairment, and without regard to whether claimant
had ever received compensation for that degree of impairment.  The result
of Dr. Boucher’s analysis agreed with Dr. Cyr’s original impairment rating with
regards to the 2% referable to the 2002 injury.  Both the commissioner and
the superior court took issue with Dr. Boucher’s analysis.  The
commissioner observed that even while Dr. Banerjee’s method resulted in “a less
than ideal estimate,” Dr. Boucher’s method seemed “particularly
imprecise.”  Accordingly, the commissioner found that Dr. Banerjee’s
evaluation “comports more closely with the [AMA Guides’]
directives.”  The superior court found “that Dr. Boucher improperly
speculated about what the impairment in ROM was before the 2002 injury.”  

 





[4]
 Claimant relies upon certain decisions by the commissioner to show that
forms can be reformed under Rule 17.0000.  This reliance is misplaced
because, while these cases may have allowed reformation, none of the claimed
mistakes pertained to impairment ratings.  Rather, the mistakes concerned
discrete facts such as a mistaken calculation, Nardone
v. Johnson Controls, Inc. No. 39-94WC, slip op. at 2-3 (Oct. 12, 1995); the
date of an injury, Kelly v. Webster Corp., No. 08-97WC, slip op. at 4-7
(June 13, 1997); and the identity of a worker’s compensation carrier, Valley
v. Orleans Cent. Supervisory Union, No. 55-98WC, slip
op. at 4-5, 7-8 (Sept. 15, 1998).  In none of these cases did anyone
challenge a physician’s performance or judgment.